In re will of THEODORE A. STEPHENSON, deceased.

[Submitted March 31st, 1923. Decided April 19th, 1923.]

### Wills—Probate of Testamentary Capacity—Execution in Conformance to Statute—Undue Influence.

*Mr. Spaulding Frazer,* for the appellant.

*Messrs. Durand, Ivins & Carlon* and *Mr. J. Henry Esser* (of the New York bar), for the respondents.

FOSTER, VICE-ORDINARY.

This is an appeal from an order of the orphans court of Monmouth county dismissing an appeal from an order of the surrogate of that county, admitting to probate a paper purporting to be the last will and testament of Theodore A Stephenson, deceased.

Mr. Stephenson, a resident of Spring Lake, died May 22d, 1919, over seventy-two years old, leaving him surviving his widow, now past seventy-six years of age, an unmarried daughter, about forty-four years old, and a son, the appellant.

The will was executed on December 2d, 1918, and by its provisions, testator created a life estate for his widow, including the use of the principal, if necessary, and on her death, he gave the entire estate, estimated to be worth $15,000, with the exception of a gold watch, given to his son, to his daughter Bertha; and in explanation of this disposition of his estate, testator in the will states, "I have purposely omitted any bequest or devise to my son * * * knowing not only that he has had large sums of money both from his mother and from me, but because I am confident that my daughter Bertha, his sister, will do all that she justly can in his behalf."

In the orphans court probate was resisted on the grounds (1) of lack of testamentary capacity; (2) that the will

was not executed in conformity to the statutory require-
ments, and (3) that it was executed as the result of undue
influence exercised over testator by his daughter.

The first and second of these grounds have apparently
been abandoned, as no direct reference to or contention
respecting either of them is made in the brief filed on behalf
of the appellant, and if they have not been abandoned, as I
have assumed, then they should be, for there is nothing of
substance in the record to support either of them.

The remaining objection, viz., the undue influence charged
to have been exercised over testator by his daughter, is sought
to be established by the following circumstances:

That testator for some time prior to his death had been
suffering from some kidney or bladder ailment which
gradually impaired his health and made him physically
and mentally incompetent to understand the nature and
effect of his act when he made his will; that his daughter,
in the last year of his life and possibly for a longer
period, attended to most, if not all, of his business affairs and
dominated the home; that testator at the time of making
his will had the erroneous impression that he and his wife
had advanced large sums of money to the son and had
assumed large financial liabilities as endorsers on the son's
promissory notes; that the daughter during the war was
aggressively pro-German, while testator and his wife and
son were ardent Americans; that the daughter became very
angry when she learned her brother had enlisted in the
American Army in July, 1918, and had sailed for Europe
in October, 1918, about a month before the Armistice was
declared; that in her anger and for her own purposes she
took advantage of her brother's absence in Europe to have
this will hurriedly executed on December 2d, 1918, in order
that testator's estate would be assured to her if anything
happened to her father before her brother returned to this
country; and that with same purposes in view she had her
mother, about the same time, convey to her what real estate
and leasehold interest stood in the mother's name.

These are the principal features stressed by appellant to support his contention of undue influence, and while it is true that Dr. Trout, who treated testator when he called at the physician's office on one occasion, about a month before he died, stated that in his opinion testator was then incompetent to make a will or to understand any business transaction, and that he had been in this condition for more than a year, the fact, clearly and convincingly established by the scrivener who drew the will, some months before, and by the attesting witnesses to the will, and by the testimony of other witnesses, who then and both before and after this visit to Dr. Trout saw and talked with testator, is that, he was fully capable and competent to understand what he was doing in any and all matters; and the proofs further show that testator's sole anxiety in the preparation and execution of the will was to make all the provision he could for his widow from his small estate, by giving her both the income and principal, if necessary, for her support, and to protect her, should she continue her improvident conduct of making and endorsing notes in blank for the son; and the proofs also show that because of the son's neglect and incompetency, the advanced age of the parents and the financial transactions in which the assistance they had given the son had involved them, made it necessary for the daughter to assume the management of their household as well as of most of their financial and business affairs.

The daughter apparently was pro-German, or at least she did not appear to approve of this country taking part in the war, and she objected to her father's espousal of the allies' cause, and assuming that she severely denounced, as claimed, the conduct of her brother in enlisting, I am at a loss to understand, in view of testator's pronounced and outspoken Americanism, how she could have influenced him at this particular time when they were at serious odds over the War, to make the will in question if testator had no other satisfactory reason for doing so.

The record further shows that testator was not laboring under any misapprehension of the facts when he recited in

his will that one reason for making no provision therein for his son was because the son "has had large sums of money both from his mother and from me," for it appears that from young manhood the son had been assisted financially by both parents, and to such extent that both parents and their properties became involved in litigation over indebtedness they had assumed for him. About the time the son enlisted, litigation affecting him and one or both parents to the extent of $22,000 was then pending in the courts of New York, of the details of which he was the only member of the family who had complete knowledge, and without attending to this litigation, and without notice or farewell to either parent, the son enlisted in the Army and left the burden of this litigation upon his aged parents, who were then obliged to rely upon the daughter to help them effect a settlement of the same.

From my consideration of the record I am convinced it was this conduct on the part of the son, coupled with testator's desire to provide for and to protect his widow that produced the will in question, for testator about the time the will was made was worried and justly incensed at what he regarded as his son's desertion of him, at a critical stage of the family's financial affairs—a desertion that was both uncalled for and unnecessary on the part of this son, who had a wife and parents, who were in some degree, at least, dependent upon him, and a desertion that threw upon the parents the burden of defending this important litigation, arising solely out of the son's transactions, and with the details of which both parents were unfamiliar.

Comment could be extended on many other features of this record, but enough has been recited to show that testator was competent to make this will, that he executed it in due form and that it is not the product of undue influence exercised over testator by his daughter or by anyone, and I will advise that the order of the orphans court dismissing the appeal be affirmed.